**ENSLEIN, Plaintiff-Appellant, v. ENSLEIN, et, Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6968. Decided July 6, 1948.

Charles J. Armstrong, George J. Weller, Cincinnati, for plaintiff-appellant.

Kane, Kennedy, Brandt & Morris, Cincinnati, for defendants-appellees.

## OPINION

PER CURIAM.

This case is presented upon appeal upon questions of law and fact from a decree of the Common Pleas Court of Hamilton County.

In the petition it is stated:

"Now comes the plaintiff and for his cause of action says that during the first four months of the year 1941, the relationship between he and the defendants was one of tranquility, peace and quiet and one of the loving relationship of

father, son and daughter-in-law; that at said time the plaintiff was the owner in fee simple of the following described real estate, to-wit:"

Then follows a description of the real estate. ·
It is further alleged that:

"The plaintiff further avers and says that the fair and reasonable value of said real estate, at the time aforementioned, was the sum of thirty thousand ($30,000.00) dollars.

"The plaintiff at that time contemplating the possibility of death and holding a deep affection for his son and daughter-in-law informed them that he was about to execute a will making certain devises to these defendants including a substantial interest in the above described real estate;

"That the defendants did at that time by reason of their close contact and confidential relationship with this plaintiff, prey upon his affections and the love that he held for them and did entice, inveigle and persuade him and thereby did unduly influence him to make a deed in fee simple to them of the aforementioned real estate, instead of making a will, and at that time promised and contracted with this plaintiff to give him the peaceable and quiet enjoyment of that property for the remainder of his life; * * *"

It is alleged the deed contained a reservation of a life estate which constituted a part of the obligation assumed by defendants. Such reservation of such life estate is in the following terms:

"The grantor hereby expressly reserves unto himself an estate for and during the term of his natural life in and to the use and occupancy of said above described real estate and in and to all of the rents, issues and profits arising therefrom."

It is further alleged that the defendants orally agreed to pay all existing obligations and outstanding debts of plaintiff, to feed and clothe the plaintiff, and care for him during his life, to give him all rents and profits of the property, to keep all buildings in repair, and to manage the property to the best interests of plaintiff.

It is further alleged:

"The plaintiff further says that immediately after the conveyance of said property on the 28th day of April, 1941, the defendants sought permission to continue to live with this

plaintiff they having resided with this plaintiff on these premises for approximately one year prior to the conveyance of the property to these defendants. The defendants at that time represented to the plaintiff that by continuing to live with him they could better perform and carry out their obligations to this plaintiff, and the plaintiff relying upon their promises and representations did agree to permit the defendants to remain on the premises so the defendants further promises and renewed their promises that this plaintiff was to receive all the rents, issues and profits of all kinds and of all natures whatsoever that might be derived from the said real estate and that the defendants did further agree to protect the interests of this plaintiff and to perform all acts with respect to this property which would inure to the benefit of this plaintiff and by reason thereof, the plaintiff permitted the defendants to occupy the home and the aforedescribed premises with him;"

It is also alleged that after execution and delivery of the deed the defendants failed to carry out their agreement and the particulars of such failure are set out in detail. It is alleged that the defendants abused, insulted, and assaulted plaintiff in his own home.

It is further stated:

"The plaintiff further avers that the conduct of the defendants has been such that the plaintiff has good reason to believe and does believe at this writing that the intent and purpose of the defendants was at the time of the conveyance not to fulfill the terms of their agreement but that the words of the agreement were spoken solely as inducements to prevail upon this plaintiff to make the above described transfer in order that these defendants could acquire the fee to the above described real estate and hold the same to the disadvantage, injury and suffering of this plaintiff;

"That the defendants have at no time since truly, honestly and sincerely performed the agreements as set forth and that they wholly failed to carry out the terms of the agreement and the plaintiff says that by reason of their conduct, they have nullified and invalidated the contract and the conveyance as of April 28, 1941, and that said conveyance should be rescinded and cancelled of record and be held for naught and that the fee in the above described real estate should be restored to this plaintiff and that he be restored to all things lost by reason thereof."

For a second cause of action the plaintiff states that the defendants are indebted to plaintiff for the rent of such premises from May 1, 1941.

The prayer of the petition is for cancellation of the deed, eviction of the defendants and for a money judgment of $5,625.00.

In the answer of defendants it is admitted that in the first four months of the year 1941 the relationship of defendants and plaintiff was pleasant, that the plaintiff was the owner in fee simple of the real estate described in the petition, that the plaintiff conveyed the property to defendants reserving a life estate in plaintiff. Otherwise, the answer is a general denial.

The petition states a cause of action calling for the exercise of chancery jurisdiction.

The evidence (consisting of a transcript of the evidence introduced in the Common Pleas Court with exhibits) has been carefully examined.

There is a marked variance in the proof and the allegations of the petition, and it is somewhat difficult to determine clearly what was the agreement of the parties.

It does, however, appear that the wife of the plaintiff having died, he suggested to his son and daughter-in-law that they come and live with plaintiff and make a home for him. It also clearly appears not only from the statements of the parties, but from their actions that the defendants were to pay certain obligations which plaintiff owed to keep the farm and buildings in good condition and that they were to be charged no rent. Now this agreement was made **before** the deed was made by plaintiff to defendants. It seems also clear that the making and execution of the deed was not made a consideration in the original agreement. The deed was dated April 28, 1941, and recorded May 8, 1941. The defendants came to live with plaintiff more than a year before the execution and delivery of the deed. The plaintiff states the defendants repeatedly requested him to make a deed after they came to live with him. The defendants state they knew nothing about a deed until delivery was made. In any event, it must be concluded that the execution and delivery of the deed were not a compliance with any previous obligation assumed by plaintiff, and was an executed gift.

It is also clear from the evidence that the life of plaintiff in his home, **after** the delivery of the deed, was anything but pleasant and that he felt it necessary to go elsewhere for his meals.

In the testimony of one Eugene Lamprecht appears the following:

"Q. I will ask you to state whether or not in your presence Arthur and Bertha Enslein had ever had a discussion with Max Enslein concerning their personal affairs?

"A. I don't know—what do you mean by personal affairs?

"Q. Did they discuss their relations with respect to this property, that is, did they discuss the ownership of the property?

"A. They got the deed. Well, what is there more about it? They owned it.

"Q Bertha and Arthur Enslein acted as though they owned the property, is that right?

"A. I think they should.

"Q. Did they act as though they were the owners of the property, in your opinion?

Counsel for defendants objected, and the objection was sustained.

"Q'. Do you know that there has been dissension between— and arguments and friction between Mr. Max Enslein and his son and daughter-in-law in the use of the property?

"A. Yes.

"Q. How long has that been going on to your knowledge?

"A. Well, a year and a half, something like that."

It appears that the defendants considered that the plaintiff merely had a right to a room to sleep in and to his meals.

The plaintiff testifies that the wife of his son abused him, slapped his face, called him vile names, and told him if he did not like the way he was treated to get out.

The plaintiff was over 70 years of age when he executed the deed. He is now over 77. The evidence in the opinion of this Court justifies the conclusion that the defendants failed to carry out their aggreement to furnish a satisfactory home for the plaintiff, and to properly care for his reasonable needs, in consideration of their occupancy of his home and the premises described in the petition, rent free to them.

However, the execution and delivery of the deed being a gratuity and an executed gift can not be now set aside. The plaintiff reserved in the deed a life estate with the right to all the rents and profits. The evidence is not clear whether he has received these or not.

The defendants were notified by the plaintiff, through his counsel, to vacate the premises September 16, 1946, and failed to so comply with such notice. By accepting the deed

containing the reservation of a life estate the defendants, regardless of any previous understanding, remained in the premises at the will of the plaintiff, who is entitled to a reasonable rental from the defendants after that date.

It appears that the defendants have paid off certain obligations of plaintiff and made certain repairs and improvements.

In so far as these increased the value of their interest in the premises after the expectation of the life estate they are entitled to no credit against the plaintiff. A part of the original agreement was that such debts were to be paid in exchange for occupancy of the premises by defendants, rent free. Whether or not the original understanding was that the defendants should come into the home of plaintiff, or he was to have a place in their home, there can be no question that the defendants from the beginning considered the plaintiff merely as a guest in their home and took full possession of the entire premises, with the exception of a bed room assigned to the plaintiff. Such being the case, it will be presumed that up to the time the defendants received a notice of eviction that any claim for services or payment of personal obligations of the plaintiff will be set off by the plaintiff's claim up to the time notice of eviction was served upon them. The defendants being trespassers after that date have no claim of any kind against plaintiff and he is entitled to a reasonable rental from the date of notice of eviction until the defendants vacate the premises.

A decree may be presented ordering the defendants to vacate the premises described in the petition not later than thirty days after the date such decree is filed with the clerk for journalization. If counsel cannot agree upon a reasonable rental value of such premises from the date of the notice of eviction, such question may be reserved for further consideration by this Court. When agreed upon or fixed, the entire sum due for rent will be ordered made a lien upon the interest of the defendants in the premises.

The evidence being somewhat in conflict as to certain chattels, some of which it is claimed the plaintiff gave the defendants, if counsel cannot agree upon the proper disposition of such chattels, this question may also be reserved for further hearing.

The defendants will pay all costs.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur.